UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KING RANGE, JR.,

                          Plaintiff,

       -against-

535 BROADWAY GROUP, LLC and
LUCKY BRAND DUNGAREES STORES,
LLC,

                        Defendants.

Case No. 1:17-cv-0423 (WHP)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
## 535 BROADWAY GROUP, LLC AND LUCKY BRAND DUNGAREES STORES, LLC'S
## JOINT MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

SMITH & SHAPIRO
116 East 27th Street
New York, NY 10016
(212) 685-6400
*Attorneys for Defendant*
*535 Broadway Group, LLC*

AARONSON RAPPAPORT
FEINSTEIN & DEUTSCH, LLP
600 Third Avenue
New York, New York 10016
(212) 593-6700
*Attorneys for Defendant*
*Lucky Brand Dungarees Stores, LLC*

SHINDER LAW GROUP, PA
(Admitted *Pro Hac Vice*)
398 Camino Gardens Blvd., Suite 109
Boca Raton, FL 33432
(561) 361-6800
*Attorneys for Defendant*
*Lucky Brand Dungarees Stores, LLC*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................1

FACTS ........................................................................................................................2

STANDARD OF REVIEW ..........................................................................................3

POINT I: THE ADA DOES NOT REQUIRE AN ACCESSIBLE ROUTE BETWEEN
THE GROUND AND BASEMENT FLOORS OF THE PREMISES ...............................4

    A.    The 2010 ADA Standards for Accessible Design Are the Only Standards
        Applicable to the Vertical Access Issue in this Case.  The 1991 ADA
        Standards Do Not Apply. ............................................................................5

    B.    An Accessible Route Between the Ground and Basement Floors of the
        Premises is not Required ............................................................................7

POINT II: PLAINTIFF'S STATE LAW CLAIMS ALLEGING FAILURE TO
PROVIDE VERTICAL ACCESS MUST ALSO BE DISMISSED ...............................10

POINT III: PLAINTIFF'S CITY LAW CLAIMS ALLEGING FAILURE TO PROVIDE
VERTICAL ACCESS MUST ALSO BE DISMISSED ..................................................11

    A.    The City of New York Expressly Waived Any Requirement for the
        Building to Provide Vertical Access Between the Ground and Basement
        Floors ......................................................................................................12

    B.    The City of New York's Issuance of a Certificate of Occupancy Reflects
        an Official Determination that the Building Complies Fully with All Laws,
        Rules, and Regulations ..............................................................................14

    C.    Plaintiff Is Not Entitled to Punitive or Compensatory Damages With
        Respect to Vertical Access ........................................................................15

CONCLUSION ..........................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arcamone-Makinano v. New York City Dep't of Bldgs.*,
   2013 WL 1459255 (Sup. Ct. Queens Cnty. April 8, 2013) ....................................................14

*Camarillo v. Carrols Corp.*,
   518 F.3d 153 (2d Cir. 2008)................................................................................................4

*Chauca v. Abraham*,
   885 F.3d 122 (2d Cir. 2018)..............................................................................................15

*Dargahi v. Honda Lease Trust*,
   370 Fed. App'x 172 (2d Cir. 2010)....................................................................................4

*DiFolco v. MSNBC Cable LLC*,
   622 F.3d 104 (2d Cir. 2010)................................................................................................4

*Doran v. 7-Eleven, Inc.*,
   524 F.3d 1034 (9th Cir. 2008) ..........................................................................................10

*Eaves v. Designs for Finance, Inc.*,
   785 F. Supp.2d 229 (S.D.N.Y. 2011)..................................................................................4

*Graves v. Finch Pruyn & Co.*,
   457 F.3d 181 (2d Cir. 2006)..............................................................................................11

*Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*,
   No. 11-cv-3327, 2013 WL 417406 (S.D.N.Y. Feb. 4, 2013) ..................................................4

*LaFaro v. New York Cardiothoracic Group, PLLC*,
   570 F.3d 471 (2d Cir. 2009)................................................................................................4

*Moeller v. Taco Bell Corp.*,
   816 F. Supp. 2d 831 (N.D. Cal. 2011) ................................................................................5

*Ne Bowen v. Rubin*,
   385 F. Supp. 2d 168 (E.D.N.Y. 2005) ..............................................................................11

*Olinger v. U.S. Golf Ass'n*,
   205 F.3d 1001 (7th Cir. 2000), *vacated on other grounds*, 532 U.S. 1064
   (2001)................................................................................................................................10

*Ortiz v. Metro. Transportation Auth.*,
   No. 13-CV-1033, 2014 WL 11460929 (S.D.N.Y. Sept. 30, 2014).........................................11

*Panzica v. Mas-Maz, Inc.*,
No. CV 05-2595, 2007 WL 1732123 (E.D.N.Y. June 11, 2007) ...........................................11

*Comm'n on Human Rights ex rel. Raymond v. Prince Management Corp.* Report
and Recommendation, OATH Index No. 301/98 (Aug. 14, 1997)...........................................12

*Shalto v. Bay of Bengal Kabob Corp.*,
No. 12-CV-920, 2013 WL 867429 (E.D.N.Y. Feb. 6, 2013), *report and
recommendation adopted as modified*, No. 12-CV-920, 2013 WL 867420
(E.D.N.Y. Mar. 7, 2013) ...........................................16

*Shariff v. Beach 90th St. Realty Corp.*,
No. 11-CV-2551 ENV LB, 2013 WL 6835157 (E.D.N.Y. Dec. 20, 2013).............................5

**Statutes**

42 U.S.C. §§ 12181, *et seq.*.................................................................................... *passim*

42 U.S.C. § 12182(a) .................................................................................................4

42 U.S.C. § 12186(b) .................................................................................................5

N.Y. City Admin. Code § 8-107 ..........................................................................11, 12

N.Y. City Admin. Code § 8-502 ...............................................................................11

N.Y. City Admin. Code § 27-214(c)..........................................................................14

N.Y. City Admin. Code § 27-292 .........................................................................12, 13

N.Y. City Admin. Code § 27-292.1 *et seq.*................................................................12

N.Y. City Admin. Code § 27-292.5 ....................................................................11–13, 15

N.Y. City Charter § 645(b)(3).....................................................................................14

N.Y. Mult. Dwell. Law § 301(1) ..........................................................................14, 15

N.Y. Civ. Rights Law § 40-c .................................................................................10, 11

N.Y. Civ. Rights Law § 40-d .................................................................................10, 11

N.Y. Exec. Law §§ 290–301 ......................................................................................10

N.Y. Exec. Law § 296....................................................................................................10

**Fed. R. Civ. P.**

Fed. R. Civ. P. 12(c) ...............................................................................................1, 3

**Regulations**

28 C.F.R. Part 36 app. D ..........................................................................................5

28 C.F.R. § 36.304(d)(2) ..........................................................................................6

28 C.F.R. § 36.401 ...................................................................................................7

28 C.F.R. § 36.402(c) ...............................................................................................8

28 C.F.R. § 36.406(a) ...........................................................................................6, 7

28 C.F.R. § 36.406(a)(3) .......................................................................................6, 7

28 C.F.R. § 36.406(a)(5) ..........................................................................................6

ADA 2010 Standards § 106.5 ................................................................................6, 9

ADA 2010 Standards § 206.2.3 ................................................................................8

ADA 2010 Standards § 206.2.3 Exception 1 ..........................................................8, 9

ADA 2010 Standards § 206.2.3.1 .............................................................................8

ADA 2010 Standards Section 206.2.4 ......................................................................9

Defendants 535 Broadway Group LLC (hereinafter "535 Broadway") and Lucky Brand Dungarees Stores, LLC (hereinafter "Lucky Brand" and together with 535 Broadway, the "Defendants") respectfully submit this joint memorandum of law in support of their joint motion, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for partial judgment on the pleadings on the issue of whether an accessible route is required between the ground and basement floors of the subject premises as claimed by plaintiff, King Range, Jr. (hereinafter, the "Plaintiff").

## PRELIMINARY STATEMENT

By this joint motion for partial judgment on the pleadings, the Defendants seek dismissal of Plaintiff's claims that the Defendants have violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181, *et seq.* and its implementing regulations, and related New York State and City disability laws and regulations, by failing to provide an accessible route (also referred to herein as "vertical access") between the ground and basement floors of the subject Premises (defined below).[1]  For the reasons set forth below, no accessible route is required as a

---

[1] Plaintiff's Amended Complaint also contains other allegations of violations under federal, state, and city disability laws, which are not the subject of this motion.  Defendants believe they have remediated all of those other alleged violations (excluding the alleged "vertical access" violations) and, as such, those alleged violations are not the subject of this motion.   Although Defendants intended to file this joint motion *after* agreement by the parties that all of those other allegations in the Amended Complaint, save for the alleged "vertical access" violations, damages and attorneys' fees (if any), had been addressed, that unfortunately has not occurred.

Since the inception of this lawsuit, Defendants have joined together to ensure that the Premises is in compliance with all applicable accessibility laws and regulations raised in Plaintiff's Complaint and Amended Complaint.  At Plaintiff's suggestion at a conference before the Court on March 16, 2018, Defendants agreed to defer filing the instant motion until such date as Defendants could complete construction to remediate the alleged violations in Plaintiff's Amended Complaint (the "Construction").  Defendants diligently sought to complete the Construction as quickly as possible.  On December 27, 2018, counsel for Defendants notified counsel for Plaintiff that the Construction had been completed and requested dates from Plaintiff's counsel for Plaintiff's expert's inspection.  Unfortunately, Plaintiff's counsel did not provide Defendants with dates for inspection for over a month, despite at least four follow-up emails to Plaintiff's counsel on January 2, January 9, January 10, and January 15, 2019.  After receiving no response from Plaintiff, and in an abundance of caution, Defendants briefed the instant motion.  Near the close of business on January 29, 2019, three business days before the filing deadline for this motion, Plaintiff's counsel provided a first-available inspection date of February 27, 2019 (to which Defendants

matter of law, and Plaintiff's claims concerning the issue of vertical access between the basement and ground floor must respectfully be dismissed.

## FACTS

Defendant 535 Broadway is the fee owner of a five-story building located at 535 Broadway, New York, New York (hereinafter, the "Building"). Ans. of 535 Broadway Ex. C, at 3. The Building was constructed in the 19th Century and, in 1973, the City of New York designated it as a landmark building in the historic SoHo district of Manhattan. Shapiro Decl. Exs. A at 10, 45; B; D; Ans. of 535 Broadway Ex. D (Dkt. 57) (setting forth the Building's existence and use since the late 19th century). The entire lot on which the Building sits is 2500 square feet, and each floor of the Building is therefore less than 3,000 square feet. Ans. of 535 Broadway Ex. "C" at 5. The cellar floor (also referred to herein as the "basement") has a floor area of less than 2,000 square feet. Ans. of 535 Broadway Ex. "D" at 1, ¶ 4(d). Lucky Brand leases three (3) floors at the Building—the ground floor and the basement floor, and the sub-basement floor—to operate its clothing retail business (hereinafter, the "Premises"). Ans. of 535 Broadway Ex. G, at 7. Only the ground and basement floors are open to the public. The sub-basement is used for storage only. The second, third, fourth, and fifth floors of the building are private residences. *See* Shapiro Decl. Ex C. There is a staircase between the ground floor and the basement floor. Am. Compl. ¶ 39.IX

---

have agreed). In response, counsel for Defendants informed Plaintiff's counsel that the motion had been briefed and that Defendants were prepared to file, but deferred to Plaintiff's counsel on whether they wished to keep the current briefing schedule or request an adjournment from the Court, without opposition from the Defendants. Plaintiff's counsel responded with the following: "Plaintiff takes no position at this point on the briefing but will advise the court of any unresolved violations uncovered during the inspection." *See* Shapiro Decl. Exs. E–F.

In light of Plaintiff's election not to request an adjournment of the filing deadline, Defendants have filed the instant motion. It is Defendants' hope that Plaintiff's expert will agree that the remaining alleged violations in the Amended Complaint have been mooted.

(Dkt. 35).  On the basement floor is Lucky Brand's men's department, sales counters, and fitting rooms.  *Id.* ¶¶ 26, 39.IX.

Plaintiff claims he suffers from medical conditions that inhibit his ability to walk and restrict body motion range and movement.  Am. Compl. ¶ 6.  Plaintiff also claims that he requires the use of a wheelchair.  *Id.*  As a result of these alleged disabilities, Plaintiff claims he is unable to access the basement floor of the Premises, where the men's department is located, via the stairway.  Plaintiff claims the Defendants must provide a means of vertical access as an accessible route between the ground and basement floors to enable access, and that failure to do so constitutes discrimination under the ADA, New York State Human Rights Law, New York State Civil Rights Law, and New York City Human Rights Law.  *See, e.g.*, Am. Compl. 39.V, 39.IX, 58, 66–90.

As a matter of law, no means of vertical access between the ground and basement floors of the Premises is required under either the Federal, State, or City law.  In fact, the ADA expressly recognizes that *no accessible route between floors* is required, as is further explained below.  Plaintiff's New York State law claims fail on the same basis as his ADA claims.  As for Plaintiff's New York City law claims, the New York City Department of Buildings ("DOB") provided an express waiver in the year 2000 ruling that an accessible route need not be installed in the Building and further determined in 2005 that the Building complies with all applicable laws, rules, and regulations when it issued the Building a Certificate of Occupancy, as also further explained below.

## **STANDARD OF REVIEW**

Under Rule 12(c), at any time after the pleadings are closed, but before trial commences, a party may move for judgment on the pleadings.  "A grant of a motion pursuant to Rule 12(c) is proper 'if, from the pleadings, the moving party is entitled to judgment as a matter of

law.'" *Dargahi v. Honda Lease Trust,* 370 Fed. App'x 172, 174 (2d Cir. 2010) (*quoting Burns Int'l Sec., Servs., Inc. v. Int'l Union,* 47 F.3d 14, 16 (2d Cir. 1995). "[T]he legal standards of review for motions to dismiss and motions for judgment on the pleadings 'are indistinguishable.'" *LaFaro v. New York Cardiothoracic Group, PLLC,* 570 F.3d 471, 475 (2d Cir. 2009) (*quoting Demuria v. Hawkes*, 328 F.3d 704, 706, n.1 (2d Cir. 2003).

The Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" in rendering its decision. *DiFolco v. MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir. 2010). The Court may also take judicial notice of and consider documents and information that are of public record. *Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC,* No. 11-cv-3327, 2013 WL 417406, at *7 (S.D.N.Y. Feb. 4, 2013); *Eaves v. Designs for Finance, Inc.,* 785 F. Supp.2d 229, 245 (S.D.N.Y. 2011).

**POINT I: THE ADA DOES NOT REQUIRE AN ACCESSIBLE ROUTE BETWEEN THE GROUND AND BASEMENT FLOORS OF THE PREMISES**

Title III of the ADA prohibits discrimination against disabled individuals by places of public accommodation. 42 U.S.C. § 12182(a). A claim of discrimination under Title III of the ADA is actionable if: (1) plaintiff is disabled within the meaning of the statute; (2) defendants are private entities that own lease (or lease to), or operate a place of public accommodation, and (3) the plaintiff was denied access to a public accommodation by defendants because of his or her disability. *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008).

The third element—whether a plaintiff has been discriminated against as a result of the alleged inaccessibility of a place of public accommodation (*i.e.*, whether the place of public accommodation is in compliance with the ADA)—is determined by whether the public accommodation complies with either the 1991 Americans with Disabilities Act Accessibility

4

Guidelines (the "1991 ADAAG" or "1991 Standards") or the 2010 ADA Standards for Accessible Design (the "2010 Standards"), as applicable.[2]  *See, e.g.*, *Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551 ENV LB, 2013 WL 6835157, at *4 (E.D.N.Y. Dec. 20, 2013) ("The Court looks to the ADA Accessibility Guidelines . . . to determine whether the alleged architectural barriers constitute discrimination under the ADA"); *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011) ("The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards").  Thus, as the case law holds, and as the ADA's implementing regulations state on their face, compliance with the Standards is compliance with the ADA.

Here, even assuming for purposes of this motion that Plaintiff could satisfy the first two elements, because the accessibility standards—and therefore the ADA—do not require vertical access between the ground and basement levels, Plaintiff cannot establish that the Premises does not comply with the ADA.  Consequently, as a matter of law, Plaintiff cannot satisfy the third element and cannot state a claim for discrimination under the ADA.

A.  **The 2010 ADA Standards for Accessible Design Are the Only Standards Applicable to the Vertical Access Issue in this Case.  The 1991 ADA Standards Do Not Apply.**

As an initial matter, Plaintiff's Amended Complaint incorrectly cites to both the 1991 Standards and the 2010 Standards as the operative ADA standards in this case with respect to the issue of vertical access.  *See, e.g.*, Am. Compl. ¶¶ 39.V, 39.IX, 58.  However, the 1991 Standards were superseded on March 15, 2012, and are no longer applicable to any public accommodation

---

[2] By way of background, the 1991 Standards and the 2010 Standards are appended to Title III's implementing regulations.  Congress empowered the Attorney General to issue regulations to enforce Title III of the ADA as applied to places of public accommodation.  See 42 U.S.C. § 12186(b).  On July 26, 1991, the Department of Justice ("DOJ") promulgated those regulations. *See* 28 C.F.R. Part 36.  The DOJ Regulations incorporated the 1991 Standards. See 28 C.F.R. Part 36 app. D.  Those standards were revised and incorporated into the DOJ Regulations in 2010.

covered under Title III of the ADA, except in the case where an accessibility element is "safe harbored" by the ADA Title III regulations.[3]  *See* 28 C.F.R. § 36.304(d)(2)(i).[4]  Instead, the 2010 Standards, which went into effect on March 15, 2012, apply to both: (1) elements that were in existence, constructed, or altered *before* March 15, 2012 and that were supposed to comply with the 1991 Standards (*i.e.,* those elements would now have to be made compliant with the 2010 Standards); and (2) elements that were constructed or altered *after* March 15, 2012.

Indeed, it is clear from the plain language of ADA's implementing regulations that:

> On or after March 15, 2012, elements in existing facilities that do not comply with the corresponding technical and scoping specifications for those elements in the 1991 Standards *must be modified to the extent readily achievable to comply with the requirements set forth in the 2010 Standards*. Noncomplying newly constructed and altered elements may also be subject to the requirements of § 36.406(a)(5).

28 C.F.R. § 36.304(d)(2)(ii)(B) (emphasis added).

Section 36.406(a)(5), in turn, states with respect to alterations done *before* March 15, 2012:

> Newly constructed or altered facilities or elements covered by §§ 36.401 [new construction] or 36.402 [alterations] that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards *shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards*.

28 C.F.R. § 36.406(a)(5)(ii) (emphasis added).

With respect to alterations done *after* March 15, 2012, Section 36.406(a)(3) states:

> New construction and alterations subject to §§ 36.401 [new construction] or 36.402 [alterations] *shall comply with the 2010 Standards* if the date when the last application for a building permit or permit extension is

---

[3] The 2010 Standards define an "element" as "[a]n architectural or mechanical component of a building, facility, space, or site."  2010 Standards § 106.5.

[4] The safe harbor provision of 28 C.F.R. § 36.304(d)(2) allows elements which were altered before March 15, 2012 and which comply with the 1991 Standards to remain as is until such time that they are altered. However, elements in existing facilities that do not comply with the 1991 standards are not safe harbored and must be brought into compliance with the 2010 ADA Standards for Accessible Design, as discussed further below.

certified to be complete by a State, county, or local government . . . is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012.

28 C.F.R. § 36.406(a)(3) (emphasis added). *See also* Appendix to 28 C.F.R. § 36.406(a) (providing table of compliance dates and applicable standards).

Thus, the ADA's implementing regulations are crystal clear that, regardless of whether a non-complying element in an existing building was constructed or altered before March 15, 2012 or simply existed before March 15, 2012, it is the 2010 Standards that apply and must be complied with, not the 1991 Standards. Similarly, alterations made to a place of public accommodation after March 15, 2012 must comply with the 2010 Standards.

In the case at bar, Plaintiff alleges that Defendants are compelled by the ADA to provide a means of vertical access between the ground and basement floors because "upon information and belief, new staircases were created with major structural modifications." Am. Compl. ¶ 58. Plaintiff does not set forth a date for when new stairs were allegedly constructed. Nevertheless, even if Plaintiff's allegation that new stairs were constructed is true, regardless of whether the Premises were altered with the construction of new stairs either before or after March 15, 2012, it is the 2010 Standards that apply to that alteration.

## B. An Accessible Route Between the Ground and Basement Floors of the Premises is not Required

Because the Building was constructed prior to January 26, 1993, it is considered an existing building for purposes of the ADA. *See* 28 C.F.R. § 36.401 (only buildings constructed for first occupancy after January 26, 1993 considered new construction under the ADA). Plaintiff alleges that a new staircase was constructed, that the new staircase constitutes an alteration under the ADA, and that an accessible route is therefore required between the ground and basement floors connected by the new staircase. *See, e.g.*, Am. Compl. ¶ 58. Assuming, *arguendo*, that the

7

Premises was indeed altered with the construction of a new staircase, the ADA nevertheless explicitly exempts the Premises from requiring an accessible route between stories in the first instance.

Generally, under the ADA, alterations to buildings constructed prior to 1992 "shall provide the maximum physical accessibility feasible" even if full compliance is "virtually impossible." 28 C.F.R. § 36.402(c).  However, the 2010 Standards provide clear exceptions to that general rule that are specifically applicable here.

By its plain language, § 206.2.3 of the 2010 Standards states that "At least one accessible route shall connect each story and mezzanine in multi-story buildings and facilities," unless an exception applies.  The very first exception to § 206.2.3 states in relevant part, "In private buildings or facilities that are less than three stories *or* that have less than 3000 square feet (279 m2) per story, an *accessible route shall not be required to connect stories*."  2010 Standards § 206.2.3, Exception 1 (emphasis added).  Therefore, under § 206.2.3 Exception 1, even assuming that no alterations had been made to the Premises and that the stairs had been preexisting, the ADA still does not require an accessible route.

The same exception of § 206.2.3 also applies where, as Plaintiff alleges, alterations were done to an existing building or facility to add stairs where none existed previously and major structural modifications were necessary for the installation.  2010 Standards § 206.2.3.1 ("In alterations and additions, where an escalator or stair is provided where none existed previously and major structural modifications are necessary for the installation, an accessible route shall be provided between the levels served by the escalator or stair *unless exempted by 206.2.3 Exceptions 1 through 7.*") (emphasis added).

The same exceptions of § 206.2.3 apply to the 2010 Standards governing accessible routes

on circulation paths.  A "circulation path" is defined as "[a]n exterior or interior way of passage provided for pedestrian travel, including but not limited to, walks, hallways, courtyards, elevators, platform lifts, ramps, stairways, and landings."  2010 Standards § 106.5.  Section 206.2.4 of the 2010 Standards states: "At least one accessible route shall connect accessible building or facility entrances with all accessible spaces and elements within the building or facility which are otherwise connected by a circulation path *unless exempted by 206.2.3 Exceptions 1 through 7.*" (Emphasis added.).

Thus, under the ADA, places of public accommodation are exempt from providing *any accessible route between stories* if they either: (1) are less than 3000 square feet per story, or (2) contain fewer than three stories.  Only one of these criteria need apply to trigger the exemption. In the case at bar, both triggers to the exception are satisfied.

With regard to the first trigger concerning square footage, each and every floor of the Building is less than 3,000 square feet.  Specifically, public records, such as the metes and bounds description of the Building's deed, conclusively show that the entire lot upon which the building is situated is no more than 2500 square feet.  *See* 535 Broadway's Answer to Pl.'s Am. Compl. Ex. "C," at 6 (Schedule A to Bargain & Sale Deed: Description of Premises); *see also* Shapiro Decl. Ex. D (March 13, 1986 deed for the Building showing that the entire lot size is not more than 2500 square feet).  Therefore, each story of the Building is necessarily less than 2500 square feet. This alone qualifies the Building for the exemption.

The second trigger concerning the number of floors also applies in this case.  The place of public accommodation at issue in this matter is the space Lucky Brand leases from 535 Broadway to operate its clothing store, specifically, the basement and ground floors of the Building—as Plaintiff himself alleges in the Amended Complaint.

Although the Building consists of five stories, a cellar, and a sub-cellar, only the two stories of the Building open to the public—the ground floor and the cellar floor—are subject to Title III of the ADA.  The sub-basement and the residences from the second through fifth floors are not subject to the ADA.  *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1048 (9th Cir. 2008) ("Though the retail portion of the North Harbor 7–Eleven is open to the public, the employees-only restroom is not.  In such "mixed-use" facilities, where only part of the facility is open to the public, the portion that is closed to the public is not a place of public accommodation and thus is not subject to Title III of the ADA."); *Olinger v. U.S. Golf Ass'n*, 205 F.3d 1001, 1004 (7th Cir. 2000), *vacated on other grounds*, 532 U.S. 1064 (2001)  ("an entity may simultaneously be both a place of public accommodation and a place that is not fully subject to Title III—in other words, a 'mixed use' facility. Pursuant to Justice Department regulations implementing Title III, to the extent that a mixed use facility 'is not open to the general public," it "is not subject to the requirements for public accommodations.') (quoting 28 C.F.R. ch. 1, pt. 36, App. B, at 624).

Therefore the place of public accommodation at issue here consists of only two (2) stories, which independently triggers the exemption.

For the foregoing reasons, the Premises is plainly exempt from the requirement of an accessible route between the ground and basement floors under the ADA, and Plaintiff's claims regarding vertical access under the ADA must be dismissed.

**POINT II: PLAINTIFF'S STATE LAW CLAIMS ALLEGING FAILURE TO PROVIDE VERTICAL ACCESS MUST ALSO BE DISMISSED**

Plaintiff's claims under the New York State Human Rights Law, N.Y. Exec. Law § 296 and New York Civil Rights Law §§ 40-c & 40-d must also be dismissed.

It is well settled that "[a] claim of disability discrimination under the New York State Human Rights Law, N.Y. Exec. Law §§ 290–301, is governed by the same legal standards as

govern federal ADA claims." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n. 3 (2d Cir. 2006) (internal citations omitted)*; cf. Ortiz v. Metro. Transportation Auth.*, No. 13-CV-1033, 2014 WL 11460929, at *15 (S.D.N.Y. Sept. 30, 2014) ("The standards for liability under [the New York State Human Rights Law] are the same as those under the equivalent federal antidiscrimination laws." (quoting *Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir. 2006)); *Ne Bowen v. Rubin*, 385 F. Supp. 2d 168, 182 (E.D.N.Y. 2005). Claims for disability discrimination arising under the New York State Civil Rights Law are also governed by the same legal standards as federal ADA claims. *See Panzica v. Mas-Maz, Inc.*, No. CV 05-2595, 2007 WL 1732123, at*2 n.1 (E.D.N.Y. June 11, 2007). Therefore, "to the extent that [Plaintiff] brings a state-law disability-discrimination claim, it survives or fails on the same basis as his ADA claim." *Graves*, 457 F.3d at 184 n. 3.

For the reasons set forth above, the ADA explicitly exempts the Building and the Premises from requiring any accessible route between the ground floor and basement for the independent reasons that: (1) each floor of the Building is less than 3,000 square feet, and (2) the place of public accommodation is less than three stories. Defendants have not unlawfully discriminated against Plaintiff by failing to provide vertical access. Therefore, Plaintiff's state law claims under the New York State Human Rights Law and the New York Civil Rights Law must fail as a matter of law.

## POINT III: PLAINTIFF'S CITY LAW CLAIMS ALLEGING FAILURE TO PROVIDE VERTICAL ACCESS MUST ALSO BE DISMISSED

Plaintiff alleges that Defendants have failed to provide vertical access pursuant to the accessibility requirements for the disabled set forth in New York City Administrative Code § 27-292.5, and that the failure to do so constitutes willful discrimination under the New York City Human Rights Law, Administrative Code §§ 8-107(4), 8-502. Am. Compl. ¶¶ 39.IX, 76–90. Plaintiff also alleges that "[e]ach of the defendants have aided and abetted others in committing

disability discrimination."  Am. Compl. ¶ 79.

Plaintiff's claims fail as a matter of law because, as is evidenced by public records, the New York City Department of Buildings ("DOB") explicitly exempted the Building from compliance with § 27-292.5's requirements with respect to vertical access between the basement and ground floors.  Additionally, DOB issued the Building a Certificate of Occupancy, reflecting an official determination that the Building complies with all applicable laws, rules, and regulations. Accordingly, Plaintiff cannot establish any discrimination by Defendants, and Defendants are not in violation of the New York City Human Rights Law.

### A.  The City of New York Expressly Waived Any Requirement for the Building to Provide Vertical Access Between the Ground and Basement Floors

The New York City Human Rights Law prohibits discrimination by places of public accommodation against a person because of that person's actual or perceived disability. N.Y. City Admin. Code § 8-107(4)(a).  It does not, however, define what accessibility accommodations are required for the disabled or what architectural barriers constitute discrimination.  That task is left to the New York City Administrative Code § 27-292.1 *et seq.*, which sets forth the technical, architectural, and structural accessibility requirements for the disabled in New York City buildings.  Ans. of 535 Broadway Ex. "D" at 10–11.  *See, e.g.*, *Comm'n on Human Rights ex rel. Raymond v. 325 Cooperative, Inc.*, Report and Recommendation, OATH Index No. 1423/98, at *11 (Jan. 12, 1999), *modified on damages*, Comm'n Dec. & Order (Feb. 24, 1999) (evaluating allegations under New York City Human Rights Law § 8-107 that building should have provided a ramp for disabled complainant by reference to requirements of N.Y. City Admin. Code § 27-292.); *cf. Comm'n on Human Rights ex rel. Raymond v. Prince Management Corp.*, Report and Recommendation, OATH Index No. 301/98, at *6–*7 (Aug. 14, 1997) (requiring ramp with 12:1 slope ration by reference to and in accordance with Chapter 27 of the New York City

12

Administrative Code).

Administrative Code § 27-292.5, at issue here, requires buildings to have accessible routes and elements for the disabled to make them usable by people having physical disabilities, subject to certain enumerated exceptions.  With respect to disabled access to and from a below-grade story, like the basement story at issue here, § 27-292.5(i)(2) provides the following exception:

> **Non-grade stories of small non-residential buildings.**  The following non-residential buildings *or parts thereof* are *exempt from the provisions of this subarticle concerning requirements for people having physical disabilities*, to the extent set forth in subdivisions (1) and (2) of this subsection:
> * * *
> (2) alterations to such building already existing where the alterations are being made . . . to an above-grade story having a total floor area of two thousand five hundred square feet or less or to a below grade story having a total floor area of two thousand square feet or less.

N.Y. City Admin. Code § 27-292.5(i)(2) (emphasis added).

On March 3, 2000, the Building's architect applied for an Amendment and Reconsideration with the New York City Department of Buildings ("DOB") asking that the Premises be exempt from the requirements of § 27-292.5 under, among other things, the above exception enumerated in § 27-292.5(i)(2).  Ans. of 535 Broadway Ex. "D" at 1, ¶ 4(d).  On June 15, 2000, DOB Manhattan Borough Commissioner, Ronny A. Livian, personally accepted the application and approved the Amendment and Reconsideration, thereby explicitly exempting the Premises from needing to provide any handicap access between the cellar and ground floors under New York City law.  Ans. of 535 Broadway Ex. "D" at 1.

Thus, with respect to the vertical access issue at bar, the Premises is fully compliant with the architectural and technical accessibility requirements for the disabled set forth in the New York City Administrative Code § 27-292.5.  Because the Premises is not in violation of § 27-292.5, as a matter of law, Defendants are not unlawfully discriminating against Plaintiff by not providing

vertical access, and Plaintiff's claim must fail.

**B.  The City of New York's Issuance of a Certificate of Occupancy Reflects an Official Determination that the Building Complies Fully with All Laws, Rules, and Regulations**

That the Building is compliant with New York City's disability access laws is further evidenced by the fact that the City of New York issued the Building a final Certificate of Occupancy on November 21, 2005.  Shapiro Decl. Ex. C.

The New York City Charter § 645(b)(3) authorizes the DOB to issue Certificates of Occupancy.  *See also Arcamone-Makinano v. New York City Dep't of Bldgs.*, 2013 WL 1459255, at *3 (Sup. Ct. Queens Cnty. April 8, 2013).  Certificates of Occupancy may be issued under New York City law only if the subject building complies with all laws, rules, and regulations applicable to it.  The New York City Charter § 645(b)(3)(d) provides that, "a certificate of occupancy of a building or structure shall certify that such building or structure *conforms to the requirements of all laws, rules, regulations and orders* applicable to it."   Additionally, under New York City Administrative Code § 27-214(c): "No certificate of occupancy or temporary certificate of occupancy [excluding amendments to previously issued certificates of occupancy] shall be issued on or after April First, Nineteen Hundred Eighty–Seven for any existing building which *has not fully complied with all requirements of this code applicable to such existing building*."   The Building is also subject to Multiple Dwelling Law § 301(1), which states, "no multiple dwelling shall be occupied . . . until the issuance of a certificate by the department that said dwelling conforms in all respects to the requirements of this chapter, to the building code and rules, and to all other applicable law."  N.Y. M.D.L. § 301(1).

Here, the DOB's issuance in 2005 of a Certificate of Occupancy for the Building—which has existed since before April 1, 1987—reflects the agency's official determination that the

14

Building has "fully complied with all requirements of this code" and that the Building "conforms with all laws, rules, regulations and orders applicable to it," including New York City's disability accessibility requirements.  *Id*.

### C.  Plaintiff Is Not Entitled to Punitive or Compensatory Damages With Respect to Vertical Access

Plaintiff incorrectly alleges that "Defendants' unlawful discriminatory conduct constitutes malicious, willful and wanton violations of the Administrative Code for which plaintiff is entitled to an award of punitive damages."  Am. Compl. ¶ 88 (citing N.Y. City Admin. Code § 8-502).  Even if this Court were to find that Administrative Code § 27-292.5 does require vertical access between the basement and ground floors—which it does not—and that Defendants' failure to provide vertical access has therefore resulted in unlawful discrimination against Plaintiff—which it has not—Plaintiff would nevertheless not be entitled to punitive damages under the New York City Human Rights Law.

Punitive damages are authorized for discrimination under the New York City Human Rights Law where "the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard."  *Chauca v. Abraham*, 885 F.3d 122, 124 (2d Cir. 2018) (internal quotation marks omitted).  Here, as discussed above, Defendants have not provided vertical access between the basement and ground floors in reliance upon official explicit waivers and determinations of the City of New York issued years ago.  Therefore, Plaintiff cannot establish the degree of culpability necessary for an award of punitive damages against Defendants.

Indeed, Plaintiff also cannot establish that he is entitled to *any* punitive damages in this case because Plaintiff does not allege any facts with any specificity that "Defendant took any actions that aggravated the disability discrimination effected by the architectural barriers—for

example, he does not allege that Defendant made any egregious statements to Plaintiff." *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867429, at *10 (E.D.N.Y. Feb. 6, 2013), *report and recommendation adopted as modified*, No. 12-CV-920, 2013 WL 867420 (E.D.N.Y. Mar. 7, 2013).  In *Shalto*, the court denied the plaintiff's application for punitive damages because the plaintiff had failed to allege or present any facts establishing that the defendant's conduct was malicious, rather than merely negligent.  *Id.*

Additionally, because no vertical access is required under New York City law, Plaintiff is also not entitled to compensatory damages under the New York City Human Rights law with respect to the vertical access issue.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendant's joint motion for partial judgment on the pleadings in its entirety with prejudice and without leave to amend, and for such other and further relief as this Court deems just, equitable, and proper.

16

Dated:  New York, New York
          February 4, 2019

                                        Respectfully submitted,

                                        */s/ Eliad S. Shapiro, Esq.* _____
                                        ELIAD S. SHAPIRO
                                        SMITH & SHAPIRO
                                        Attorneys for Defendant
                                        535 BROADWAY GROUP, LLC
                                        116 East 27th Street
                                        New York, NY 10016
                                        (212) 685-6400

                                        */s/ Nanor L. Terjanian* _____
                                        NANOR L. TERJANIAN (NT7671)
                                        AARONSON RAPPAPORT
                                        FEINSTEIN & DEUTSCH, LLP
                                        Attorneys for Defendant
                                        LUCKY BRAND DUNGAREES
                                        STORES, LLC
                                        600 Third Avenue
                                        New York, New York 10016
                                        (212) 593-6700

                                        */s/ Lance Shinder, Esq.* _____
                                        LANCE SHINDER
                                        SHINDER LAW GROUP, PA
                                        Attorneys for Defendant
                                        LUCKY BRAND DUNGAREES
                                        STORES, LLC
                                        (Admitted *Pro Hac Vice*)
                                        398 Camino Gardens Blvd., Suite 109
                                        Boca Raton, FL 33432
                                        (561) 361-6800